Raymond E. CARTLEDGE, Martin F. Tynan, John E. Haigney and Donald E. Scaggs, as members of the Pension Plan Committee of the Pension Agreement between Clevepak Corporation, Piermont Board Mill and the United Paperworkers International Union AFL–CIO, Plaintiffs,

v.

The Honorable Howard MILLER, Judge of the Family Court of the State of New York, County of Rockland, Rockland County Support Collection Unit and Vivian Cozart, Defendants.

No. 78 Civil 1232.

United States District Court,
S. D. New York.

Sept. 5, 1978.

Ide & Haigney, New York City, for plaintiffs; John E. Haigney, Ronald M. Senio, Roy B. Simpson, Jr., New York City, of counsel.

Marc L. Parris, New City, N. Y., for defendants County of Rockland and Rockland County Dept. of Social Services; Steven L. Abel, Spring Valley, of counsel.

Louis J. Lefkowitz, New York City, for defendant Howard Miller; Donald Sticklor, New York City, of counsel.

U. S. Dept. of Justice, Washington, D. C., for Amicus Curiae; M. Carr Ferguson, Asst. Atty. Gen., Myron C. Baum, Deputy Asst. Atty. Gen., Michael J. Roach, Jo-Ann Horn, Attys., Tax Division, Washington, D. C., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

[1] This case involves the construction of the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") which prohibit the assignment or alienation of employees' pension benefits and thereby exempt such benefits from attachment or garnishment by creditors.[1] The issue presented is whether there exists an implied exception to these "anti-assignment or alienation" provisions with respect to orders for the support of a wife and dependent children issued by a state court pursuant to statutory authority. Defendants Rockland County (New York) and the Rockland County Support Collection Unit have obtained a state court order garnishing the pension of George Allen Cozart in order to fulfill support obligations and arrears owed to his wife, defendant Vivian Cozart. Also named as a defendant is the Family Court Judge who issued the order. Plaintiffs, members of the Pension Plan Committee created under the Pension Agreement between Clevepak Corporation and the United Paperworkers International Union (the "Pension Committee"), bring this action to enjoin the enforcement of the state court order on the ground that such enforcement would violate ERISA. Finding that ERISA's anti-assignment or alienation provisions do not preclude the execution of validly issued court orders enforcing family support rights, this Court denies the injunction and dismisses the action upon the merits.

The facts which gave rise to this case are as follows. Commencing in 1958 and over the next twenty years George Allen Cozart failed in his legal duty to support and maintain his wife and children; during that period he frequently disregarded orders of the Rockland County Family Court intended to secure compliance with that obligation, and he was constantly in arrears.[2] In 1965 his chronic failure to comply with the orders led to his being held in contempt of court and his commitment to jail for three days.[3] For the last eleven years, the support of his dependents has been borne in large measure by the community through public assistance payments made by the Rockland County Department of Social Services.[4] Pursuant to the Social Security Act, as amended,[5] the wife assigned to the Department "all the support rights (accrued, Pending and continuing)" which she had against her hus-

---

1. Pub.L.No.93–406, §§ 206(d)(1), 1021(c), 88 Stat. 829 (1974), *codified at* 29 U.S.C. § 1056(d)(1); 26 U.S.C. § 401(a)(13); *see* Treas. Reg. § 1.401(a)–13(c)(1)(ii), *reported in* 43 Fed. Reg. 6942 (1978).

2. The original judgment establishing Cozart's support obligations was entered in 1958. *In re Vivian Cozart v. George Allen Cozart,* No. 2959 (Fam.Ct. Rockland Co. Dec. 4, 1958). Principally because of Cozart's failure to make the payments required of him, the original order was modified on various occasions.

3. *Id.* (May 26, 1965).

4. According to the records of the Rockland County Department of Social Services, Vivian Cozart received public assistance from Septem-

ber 1, 1966 to December 31, 1966; from March 1, 1967 to February 29, 1968; from September 1, 1968 to August 31, 1973; and from February 20, 1974 to March 31, 1977.

5. 42 U.S.C. § 602(a)(26)(A):

A State plan for aid and services to needy families with children must . . . provide that, as a condition of eligibility for aid, each applicant or recipient will be required— to assign the State any rights to support from any other person the applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed . . . .

band in return for "the public assistance and care received and to be received."[6]

In January 1967, after Cozart had failed to comply with a number of orders to provide for the necessities of his family, the Family Court entered a "payroll deduction order" pursuant to New York's Family Court Act.[7] The order was addressed to Cozart's employer, Clevepak Corporation, directing it to withhold $35.00 per week from his wages and to pay those withholdings to the Family Court for the benefit of his dependents.[8] However, he continued to be in arrears, and by 1977 they were substantial. He retired that year and was entitled to receive a pension under the Pension Plan Agreement between Clevepak Corporation and the United Paperworkers International Union (the "Clevepak Plan"). The Social Services Department petitioned the Family Court for an order directing Cozart to pay the accumulated arrears (then estimated to be $5,275.80) at a rate of $35.00 per week. After a hearing, the Court issued a "corrected payroll deduction order" in an effort to liquidate the arrears. The order directed the Pension Committee "to withhold and deduct from the pension of [George Cozart] the sum of $35.00 per (week) commencing . . . forthwith and to forward the total amount so withheld . . . to Rockland County Support Collection Unit."[9] The Pension Committee then brought this suit to enjoin the enforcement of the state court order as an invalid assignment or alienation of pension benefits.

The essential claim, however worded, is that the pension payments to which Cozart is entitled are beyond the reach of the state court order by reason of ERISA. The Committee contends that the order is an attachment of an employee's pension benefits, in violation of ERISA's mandate that "benefits provided under the plan may not be assigned or alienated"[10] and contravenes the Clevepak Plan's requirement that no "[a]ssignment, pledge, or encumbrance of any kind, of pensions or deferred benefits" should be recognized.[11] Compliance with the order, it asserts, would constitute a breach of its fiduciary duty[12] and would jeopardize the Clevepak Plan's tax-exempt status under the Internal Revenue Code.[13] Accordingly, the Committee seeks a final judgment permanently enjoining the defendants from enforcing or attempting to enforce or otherwise implement the corrected payroll deduction order.

The defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted. They contend that federal jurisdiction to enter an injunction against enforcement of the state court order is barred by the Anti-Injunction Act;[14] further, that even if the Court has jurisdiction it should abstain on grounds of comity and federalism; and, finally, that ERISA does not prohibit the enforcement of support rights against pension benefits.

■ The Pension Committee submits affidavits in opposition to defendants' motion. Accordingly, the motion may be deemed one

---

6. Def.Exh.C.

7. N.Y.Jud.Law—Fam.Ct.Act §§ 411 *et seq.* (McKinney).

8. *In re Vivian Cozart v. George Allen Cozart,* No. 2959 (Fam.Ct. Rockland Co. Jan. 6, 1967).

9. *Id.* (Feb. 16, 1978). The order was not entirely enforceable against Cozart's pension, which yielded only $35.00 per month.

10. I.R.C. § 401(a)(13), 26 U.S.C. § 401(a)(13); ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).

11. Pl.Exh. 1.

12. As a fiduciary, the Pension Committee is obligated to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Subchapter III of ERISA]." ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

13. I.R.C. § 501, 26 U.S.C. § 501.

14. 28 U.S.C. § 2283.

for summary judgment under Rule 56.[15] The parties are in accord that no genuine issue of fact exists and that the matter is ripe for summary judgment. Since the case involves a significant construction of ERISA and other applicable federal statutes, the Court invited the Department of Justice to submit an *amicus* brief setting forth its views, which it did, and its counsel also participated in oral argument.

## I

A threshold issue is whether federal jurisdiction is barred by the Anti-Injunction Act, which provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[16] The statute is an absolute prohibition upon the federal courts against enjoining state court proceedings, unless one of the three specifically defined exceptions applies.[17] The Pension Committee here contends that the Anti-Injunction Act is no bar to this action since it is "expressly authorized" by ERISA. It relies on ERISA's authorization

of civil actions by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[18] Such actions can be brought only in federal court.[19]

The question is whether the foregoing provision of ERISA comes under the "expressly authorized" exception to the Anti-Injunction Act. To qualify under this exception, it is not necessary that the congressional enactment contain a specific reference to the Anti-Injunction Act, nor must it explicitly sanction injunctions against state proceedings.[20] The test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding."[21] ERISA clearly meets the first prong of this test, for it establishes exclusive federal jurisdiction for fiduciaries to obtain injunctive relief to redress or prevent violations of its provisions.[22]

15. Fed.R.Civ.P. 12(b)(6); *Freeman v. Marine Midland Bank–N.Y.,* 494 F.2d 1334 (2d Cir. 1974); *Barrett v. United Hospital,* 376 F.Supp. 791, 795 (S.D.N.Y.), aff'd mem., 506 F.2d 1395 (2d Cir. 1974); 2A Moore's Federal Practice ¶ 12.09, at 2302 n. 25 (citing cases).

16. 28 U.S.C. § 2283.

17. *Mitchum v. Foster,* 407 U.S. 225, 229, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); cf. *Jacobs v. Tenney,* 321 F.Supp. 937, 943 (S.D.N.Y.1970).

18. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

19. ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), provides: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary."

20. *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 632, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Mitchum v. Foster,* 407 U.S. 225, 237, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). For examples of cases in which federal statutes were found to

be express authorizations, even though the statutes made no explicit reference to the Anti-Injunction Act or to state court proceedings *per se,* see, e. g., *Amalgamated Clothing Wkrs. of America v. Richman Bros. Co.,* 348 U.S. 511, 516–17, 75 S.Ct. 452, 99 L.Ed. 600 (1955) (NLRA authorization for NLRB suits); *Porter v. Dicken,* 328 U.S. 252, 66 S.Ct. 1094, 90 L.Ed. 1203 (1946) (Emergency Price Control Act of 1942); *Okin v. SEC,* 161 F.2d 978 (2d Cir. 1947) (Public Utility Holding Company Act).

21. *Mitchum v. Foster,* 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), quoted in *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 632, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977).

22. ERISA § 502(a)(3), (e)(1), 29 U.S.C. § 1132(a)(3), (e)(1). Earlier versions of the Act had provided that all civil actions "might be brought in any court of competent jurisdiction, State or Federal," see, e. g., H.R. 2, 93d Cong., 1st Sess. § 503(g)(1) (1973), but the final version vested exclusive federal jurisdiction in all suits for injunctive relief, in order to facilitate uniform interpretation and enforcement of federal rights.

■ The second prong of the test is also satisfied, since the "specific and uniquely federal right . . . could be frustrated if the federal court were not empowered to enjoin a state court proceeding." [23] That is, state court proceedings might be utilized to garnish pensions in violation of ERISA's anti-assignment or alienation provisions.[24] Unless a federal court could grant injunctive relief, enforcement of the state court order would frustrate the legislative goal of preventing the attachment of pension benefits by creditors.[25] Also persuasive is the Second Circuit's holding in *Marshall v. Chase Manhattan Bank (National Association)* [26] that the Anti-Injunction Act is inapplicable to a suit by the Secretary of Labor under ERISA's jurisdictional provision,[27] because Congress in enacting ERISA stated a strong preference that controversies be adjudicated in a federal tribunal, thereby " 'eliminating the threat of conflicting and inconsistent State and local regulation.' " [28]

By vesting federal courts with exclusive jurisdiction over suits brought under ERISA, Congress hoped that more uniform interpretation of ERISA would result.

■ Even though the Anti-Injunction Act does not preclude the Court from issuing the requested relief, defendants urge the Court not to exercise its power and to abstain from taking jurisdiction in this case. Federal courts may abstain in a suit to enjoin an ongoing state proceeding because of considerations of "comity and federalism." [29] Originally invoked to discourage litigation disrupting state criminal prosecutions,[30] comity and federalism may also justify federal court abstention where a party institutes a federal action challenging the validity of state court procedures in a pending state civil action, although he has the opportunity in the state court to raise the very issues presented to the federal court.[31]

**23.** *Mitchum v. Foster,* 409 U.S. 225, 237, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972).

**24.** I.R.C. § 401(a)(13), 26 U.S.C. § 401(a)(13); ERISA § 206(d), 29 U.S.C. § 1056(d).

**25.** Thus where the state proceedings themselves violate a federal statute, the Anti-Injunction Act poses no bar to federal injunctive relief against offending state court orders and judgments. *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 643–45, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (Blackmun, J., concurring); *Vernitron Corp. v. Benjamin,* 440 F.2d 105 (2d Cir.), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971); *Studebaker Corp. v. Gittlin,* 360 F.2d 692 (2d Cir. 1966) (Friendly, J.). The Pension Committee was not able to assert the federal law as a defense in the state court proceeding, because it was not a party. Intervention into the suit would not be automatic but would rest within the discretion of the Family Court. *See* note 33 *infra.*

**26.** 558 F.2d 680 (2d Cir. 1977).

**27.** *Id.* at 683. The Court rested its opinion, in part, on the intent of Congress not "to hamstring federal agencies in the utilization of federal courts to protect federal rights." *Id.* That the present case is brought by private plaintiffs should not distinguish the cases. *See General Motors v. Buha,* 7 Civ. 72629 (E.D.Mich. Feb. 22, 1978). Judge Friendly observed with respect to the securities laws: "If the policy of the anti-injunction statute is superseded by the need for immediate and effective enforcement of federal [law], the fact that enforcement here

is by a private party rather than the agency should not be controlling." *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966). As in *Studebaker,* Congress meant for private suits to be essential supplements to actions by the Secretary of Labor. H.R.Rep.No.93–533, 93d Cong., 1st Sess. (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News 4639, 4640.

**28.** 558 F.2d at 683 & n. 5, *quoting* 120 Cong. Rec. 29197 (1974) (Rep. Dent).

**29.** *Mitchum v. Foster,* 407 U.S. 225, 243–44, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *id.* at 244, 92 S.Ct. 2151 (Burger, C. J., concurring).

**30.** *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Ledwith v. Douglas,* 568 F.2d 117 (8th Cir. 1978); *cf. Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, *reh. denied,* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975) (public nuisance prosecution); *MTM, Inc. v. Baxley,* 523 F.2d 1255 (5th Cir.), *appeal dismissed and case remanded,* 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975).

**31.** In *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), defendants, prosecuted by the Illinois Department of Public Aid for allegedly concealing assets while on welfare, filed suit in federal court to enjoin the state proceedings without filing an answer in the state court. The Supreme Court found *Younger* 's principles of judicial restraint applicable, because the defendants had an adequate opportunity to raise the federal constitutional

However, the present action is distinguishable from these cases.

First, the action does not involve the interruption of a pending state proceeding by the defending party. Any determination in this action will not affect the validity of the judgment of the Rockland County Family Court directing the husband to make payments for the support of his dependents; judgment had already been entered by the Family Court by the time the Pension Committee, which was not a party in the state case, brought the present action.[32] Thus the Pension Committee had no opportunity to present its federal claims in the state proceeding, nor is there any danger of duplicative litigation burdening the State.[33]

■■■ Moreover, no state law or procedural practice is at issue in this suit, so that there is no reason to defer to the state courts to construe state law in the face of federal constitutional challenges.[34] Finally, the ERISA claim falls outside the jurisdiction and expertise of the Family Court, whose special province is domestic relations law.[35] Any alleged affront to the dignity of state courts would be minimal in this case and is superseded by Congress's intent to preempt state law with the creation of uniquely federal rights and to provide exclusive federal jurisdiction.[36]

## II

■■■ Finding and exercising jurisdiction, the Court considers the merits of plaintiff's complaint, which asserts that the attachment of George Cozart's pension to fulfill his support obligations is an invalid "assign-

issues in state court as a defense to their prosecution and because the state court should have been allowed to interpret the attachment statute so as to avoid constitutional problems. *See also Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (challenge to New York contempt procedures); *Anonymous v. Association of the Bar of the City of N. Y.,* 515 F.2d 427 (2d Cir.) *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (challenge to New York grand jury procedures in attorney discipline proceedings); Fiss, *Dombrowski,* 86 Yale L.J. 1103 (1977) (tracing development and expansion of *Younger* doctrine).

32. In contrast, the injunctive suits in *Younger, Huffman, Juidice,* and *Trainor* were all brought during the pendency of state court proceedings by parties to those proceedings. In *Rite Aid Corp. v. Board of Pharmacy of the State of N. J.,* 421 F.Supp. 1161, 1180 (D.N.J.1976) (three-judge court), Judge Stern, concurring on the issue of abstention, said that "[o]nce it is ascertained that no state proceeding is pending, no doctrine of law or consideration of comity requires plaintiffs to choose a state court rather than a federal court in which to enforce federal rights." *Accord, Boe v. Colello,* 438 F.Supp. 145 (S.D.N.Y.1977).

33. *Compare Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Marshall v. Chase Manhattan Bank (Nat'l Ass'n),* 558 F.2d 680, 684 (2d Cir. 1977). Nor is it clear that the Pension Committee could intervene as of right to vacate the state court judgment pursuant to N.Y.Civ.Prac.Law § 1012 (McKinney), *see Taw Int'l Leasing, Inc. v. Overseas*

*Private Investment Corp.,* 57 A.D.2d 799, 394 N.Y.S.2d 672 (1977); *Lesser v. West Albany Warehouses, Inc.,* 17 Misc.2d 461, 191 N.Y.S.2d 113 (Sup.Ct.1959). Intervention, if granted at all, would likely be "in the discretion of the court." N.Y.Civ.Prac.Law § 1013 (McKinney). Even if the Pension Committee could intervene under New York law, the state court might be precluded by ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), from taking jurisdiction over the claim (which would resemble a separate suit).

34. *Compare Trainor v. Hernandez,* 431 U.S. 434, 445, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Greenspan v. Klein,* 442 F.Supp. 860, 863 (D.N. J.1977) (three-judge court) (Fisher, J., concurring and dissenting).

35. N.Y.Jud.Law—Fam.Ct. Act § 115 (McKinney). *Compare Trainor v. Hernandez,* 431 U.S. 434, 445, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 511, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (abstention appropriate when state statute unclear).

36. ERISA §§ 502, 514, 29 U.S.C. §§ 1132, 1144. The fifth vote for the majority result in *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), was that of Mr. Justice Blackmun, who held that *Younger* abstention required a balancing of federal and state interests. *Id.* at 448, 97 S.Ct. 1911 at 1920. Where the federal interest is great, as in ERISA, and the state interest more attenuated, as in this case, federal courts should not abstain. *Marshall v. Chase Manhattan Bank (Nat'l Ass'n),* 558 F.2d 680, 683–84 (2d Cir. 1977).

ment or alienation" under ERISA.[37] Plaintiff's contention is based upon a literal and strict reading of that section to exempt pension benefits from any and every levy, garnishment, or attachment. So read, plaintiff may be correct, but, "[o]n the other hand, it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning" and should be "disregarded when it defeats the manifest purpose of the statute as a whole."[38] Thus defendants argue that an exception to the exemption embodied in ERISA's anti-assignment or alienation provisions must be implied in order to secure enforcement of Cozart's obligations to support his dependents.

The anti-assignment or alienation sections of ERISA have been authoritatively interpreted to preclude "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which

is, or may become, payable to the participant or beneficiary."[39] And Congress intended that ERISA's provisions would "supersede any and all State laws insofar as they may . . . relate to any employee benefit plan."[40] These generalized proscriptions, however, are not sufficient to infer that Congress meant to preclude the ancient family law right of maintenance and support and the issuance of process to enforce that right.

■ As a fundamental principle of statutory interpretation, courts have presumed that the basic police powers of the States, particularly the regulation of domestic relations, are not superseded by federal legislation unless that was the clear and manifest purpose of Congress.[41] An important and pervasive state law policy is to enforce the support rights of dependent spouses and children, even when they require the attachment of assets or earnings normally inalienable or unassignable under state law.[42] Consequently, the Supreme Court

---

**37.** I.R.C. § 401(a)(13), 26 U.S.C. § 401(a)(13); ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).

**38.** *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand); *see Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J., concurring).

**39.** Treas.Reg. § 1.401(a)–13(c)(1)(ii), *reported in* 43 Fed.Reg. 6942 (1978). *Compare Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978) (accord) *with National Bank of North America v. International Brotherhood of Elec. Wkrs., Local 3,* 93 Misc.2d 590, 400 N.Y.S.2d 482 (Sup.Ct. 1977) (contra). The Internal Revenue Service's interpretation, always entitled to deference, finds support in the legislative history of ERISA. H.R.Conf.Rep.No.93–1280, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 5038, 5061 (for purposes of ERISA's anti-assignment or alienation provisions, "a garnishment or levy is not to be considered a voluntary assignment").

**40.** ERISA § 514(a), 29 U.S.C. § 1144(a).

**41.** *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Stone v. Stone,* 450 F.Supp. 919, 924 (N.D.Cal.1978) (Renfrew, J.) (interpreting ERISA's anti-assignment or alienation provisions). Thus Congress will not abridge, without explicitly saying so, the state's

"power to make rules to establish, protect, and strengthen family life." *Labine v. Vincent,* 401 U.S. 532, 538, 91 S.Ct. 1017, 1021, 28 L.Ed.2d 288 (1971).

**42.** Substantial consensus exists among the state court systems in favor of excepting support rights from such exemptions. *See Mahone v. Mahone,* 213 Kan. 346, 517 P.2d 131 (1973); *McDonald v. McDonald,* 351 Mich. 568, 88 N.W.2d 398 (1958); *Thiel v. Thiel,* 41 N.J. 446, 197 A.2d 354 (1963); *Courtney v. Courtney,* 251 Wis. 443, 29 N.W.2d 759 (1947); *City of Miami v. Spurrier,* 320 So.2d 397 (Fla.App. 1975), *cert. denied,* 334 So.2d 604 (Fla.1976); *Calvin v. Calvin,* 6 Or.App. 572, 487 P.2d 1164 (1971); *Collida v. Collida,* 546 S.W.2d 708, 711 (Tex.Civ.App.1977) (Keith, J., concurring). Indeed, the New York state courts have "uniformly rejected the argument that the pension statute protects a father against his obligation to support his family." *Cogollos v. Cogollos,* 93 Misc.2d 406, 402 N.Y.S.2d 929, 930 (Sup.Ct. 1978) (citing cases). The California courts have been alone in criticizing this exception, *see Ogle v. Heim,* 69 Cal.2d 7, 69 Cal.Rptr. 579, 442 P.2d 659 (1968), *appeal dismissed,* 393 U.S. 265, 89 S.Ct. 477, 21 L.Ed.2d 426 (1969). *But see Phillipson v. Board of Administration of Public Employees' Retirement Sys.,* 3 Cal.3d 32, 89 Cal.Rptr. 61, 473 P.2d 765 (1970) (disregarding *Ogle* to allow wife to garnish inalienable pension rights).

has held that "[u]nless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children." [43]

The debates and reports on ERISA furnish little or no direction toward the precise issue: nothing contained therein suggests that the proscription against assignment or alienation was intended to include family support payments.[44] Indeed, an overall congressional purpose not to interfere with the States' power to enforce family support obligations may be gleaned from judicial interpretation of exemption provisions in other federal statutes. Though not exactly in *pari passu,* they indicate a general congressional intent not to preclude enforcement of family support obligations. Provisions so interpreted include the exemption sections of the Social Security Act,[45] the Veterans Benefits Act,[46] and the Railway Retirement Act,[47] as well as the Bankruptcy Act's provision for discharge of prior obligations.[48] The rationale behind such judicial

**43.** *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904).

**44.** ERISA's anti-assignment or alienation provisions speak only in general terms. Neither H.R.2 nor H.R.4200, considered by the House of Representatives and the Senate in 1973, contained such provisions. Only in 1974 were they added. Thus the only legislative history is a short paragraph in H.R.Conf.Rep.No.93–1280, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 5038, 5060.

**45.** Act of Aug. 14, 1935, § 207, 49 Stat. 624, *codified at* 42 U.S.C. § 407:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

For cases interpreting § 207 to except support payments, see *Texas Baptist Children's Home v. Corbitt,* 321 S.W.2d 610 (Tex.Civ.App.1959); *Brown v. Brown,* 32 Ohio App.2d 139, 288 N.E.2d 852 (1972); *Huskey v. Batts,* 530 P.2d 1375 (Okl.App.1974); *cf. Cohen v. Murphy,* 368 Mass. 144, 330 N.E.2d 473 (1975).

**46.** Pub.L.No.85–857, § 3101(a), 72 Stat. 1229 (1958), *codified at* 38 U.S.C. § 3101(a):

> Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

For cases interpreting § 3101 to except support payments, see *Hannah v. Hannah,* 191 Ga. 134, 11 S.E.2d 779 (1940); *Stirgus v. Stirgus,* 172 Miss. 337, 160 So. 285 (1935); *Dillard v. Dillard,* 341 S.W.2d 668 (Tex.Civ.App.1961).

**47.** Act of Aug. 29, 1935, § 12, 49 Stat. 973, *codified at* 45 U.S.C. § 231m:

> Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated . . . .

This section has been interpreted to except support payments, *see In re Marriage of Hisquierdo,* 19 Cal.3d 613, 139 Cal.Rptr. 590, 566 P.2d 224 (1977); *Commonwealth v. Berfield,* 160 Pa.Super. 438, 51 A.2d 523 (1947), and courts have frequently "anticipated" such payments when applicable against support obligations, *see LaFarr v. LaFarr,* 132 Vt. 191, 315 A.2d 235 (1974); *Heuchan v. Heuchan,* 38 Wash.2d 207, 228 P.2d 470 (1951).

**48.** Act of July 1, 1898, ch. 541, § 17(a), 30 Stat. 550: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part . . . ." This exemption was interpreted in *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), to except family support payments. Congress amended the Act in 1903 to provide for such exception explicitly; 11 U.S.C. § 35(a)(7) is the present codification of the exception:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are for alimony due or to become due, or for maintenance and support of wife or child . . . .

This provision has been liberally interpreted for the benefit of dependent spouses and children. *Williams v. Department of Social & Health Servs., State of Wash.,* 529 F.2d 1264 (9th Cir. 1976); *Golden v. Golden,* 411 F.Supp. 1076 (S.D.N.Y.), *aff'd,* 535 F.2d 213 (2d Cir. 1976).

interpretations of the will of Congress was aptly summarized by Judge, later Justice, Rutledge in *Schlaefer v. Schlaefer:* [49] "[T]he usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief." [50]

 Moreover, the goals underlying ERISA support the reasoning of this common law presumption. Originally introduced in 1967, ERISA was meant "to prescribe legislative remedies for the various deficiencies existing in the private pension plan systems," primarily relating to prior abuses in plan vesting, funding, termination, and fiduciary conduct. [51] In particular, Congress was solicitous of the "continued well-being and security of millions of employees *and their dependents* [who] are directly affected by these plans." [52] Rather than intending to undermine the family law rights of dependent spouses and children, the legislature was concerned that "employees and their beneficiaries"—the entire family—be protected by ERISA. [53]

 Thus the conclusion is warranted that, like the previous congressional exemptions, ERISA's anti-assignment or alienation sections were included only "to protect a person and those dependent upon him from the claim of creditors," [54] not to insulate a breadwinner from the valid support claims of spouse and offspring. [55] This conclusion is buttressed by the *amicus* brief submitted on behalf of the Departments of Labor and the Treasury, which are charged with enforcement and interpretation of ERISA and whose interpretation of the Act, though not controlling, is entitled to great weight. [56] The Government takes the position, which appears reasonable and correct, that "family support decrees were not intended to be within the scope of the anti-alienation provisions of ERISA." [57]

In response to the conclusion that an implied exception to ERISA's anti-assignment or alienation provisions is justified, the Pension Committee nonetheless advances two further arguments. First, it contends that attachment of the delinquent spouse's pension is not necessary to guarantee support payments, for "[t]here is no inhibition [to]

---

**49.** 71 U.S.App.D.C. 350, 112 F.2d 177 (1940).

**50.** *Id.* at 358, 112 F.2d at 185.

**51.** S.Rep.No.93–127, 93d Cong., 1st Sess. (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News 4838. For the general background of the Act, see Note, *At Variance with the Administrative Exemption Provisions of ERISA: A Proposed Reform,* 87 Yale L.J. 760, 761–65 (1978).

**52.** ERISA § 2(a), 29 U.S.C. § 1001(a) (emphasis added).

**53.** ERISA § 2(c), 29 U.S.C. § 1001(c) (emphasis added):

It is hereby further declared to be the policy of this Act to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans *and their beneficiaries* by improving the equitable character and the soundness of such plans

. . . .

*See also* ERISA § 2(b), 29 U.S.C. § 1001(b) (similar language). Although ERISA § 3(8), 29 U.S.C. § 1002(8), defines "beneficiary" more narrowly, I take the term in its broader sense when it is used in the preamble, which was a

general statement of the goals of the statute, not a technical recitation.

**54.** *Brown v. Brown,* 32 Ohio App.2d 139, 288 N.E.2d 852 (1972) (Court's syllabus).

**55.** *Accord, Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978); *Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal.1978); *Cogollos v. Cogollos,* 93 Misc.2d 406, 402 N.Y.S.2d 929 (Sup.Ct.1978); *Wanamaker v. Wanamaker,* 93 Misc.2d 784, 401 N.Y.S.2d 702 (Sup.Ct.1978); Pattiz, *In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans,* 5 Pepperdine L.Rev. 191, 236–38 (1978). *Contra, General Motors Corp. v. Townsend,* 6 Civ. 72159 (E.D.Mich. Dec. 16, 1976), *reported in* Pension Rep. [BNA] No. 177, at D–1 (Feb. 27, 1978).

**56.** *See United States v. Pennsylvania Indus. Chem. Corp.,* 411 U.S. 655, 674, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); *United States v. Cartwright,* 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

**57.** Brief for the United States as *Amicus Curiae,* at 10.

preclude a court from jailing a pensioner who is in default of court ordered support payments." [58] This stands reason on its head. To jail the errant husband would impose upon the community the expense of keeping and feeding him, in addition to the burden of supporting the wife and children on welfare. Such a result is directly contrary to the legislative goal that "the continued well-being and security of millions of employees and their dependents" be guaranteed by ERISA. It is also contradicted by the facts in this case: after twenty years, and at least one period of incarceration, George Cozart's support payments remain in substantial arrears. To interpret ERISA so as to enjoin the attachment of the pension in this case is, practically, to foreclose any enforcement of the wife's support rights. "Until and unless Congress has made it plain that it intended the absurd, unfair and unconscionable result contended for by the movant . . . the Court will not leave the field, and will permit the normal and routine enforcement machinery with respect to outstanding support orders to function." [59]

The Committee argues, secondly, that the support rights owed to the dependents cannot be enforced against the pension by the *assignee,* Rockland County Department of Social Services. Plaintiffs rely on the case of *Philpott v. Essex County Welfare Board,*[60] in which the Supreme Court read the exemption section of the Social Security Act [61] to bar the county welfare board from garnishing disability payments assigned to

it in return for receipt of public assistance. Reliance upon *Philpott* to govern this case is misplaced, since it is distinguishable. The holding in that case rested squarely on the Supremacy Clause: the federal exemption provision took precedence over the New Jersey statute [62] under which the assignment was made.[63] In contrast, the assignment in the present action was made pursuant to federal law—the Social Security Act, as amended by the Social Services Amendments of 1974.[64]

Moreover, the purpose of the 1974 Amendments militates against an interpretation that would deprive the State of the assets assigned by Mrs. Cozart. Congress sought to recoup for the public fisc some portion of the payments which were being made by the federal and state governments to maintain the wife and child.[65] To require the public authorities to continue to make the payments to the wife and to immunize the husband's pension payments would serve to defeat the congressional purpose to recover, to the extent possible, payments made to welfare recipients. The law is not bereft of common sense [66] and will not sanction such a result.

■ Additionally, Congress in the 1974 Amendments intended that the state assignee stand in the shoes of the spouse. As amended, the Social Security Act provides that "[a] debt which is a child support payment obligation assigned to a state [under the 1974 Amendments] is not released by a

---

**58.** Plaintiffs' Reply Memorandum, at 17.

**59.** *Cogollos v. Cogollos,* 93 Misc.2d 406, 402 N.Y.S.2d 929, 930 (Sup.Ct.1978).

**60.** 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).

**61.** 42 U.S.C. § 407 (quoted in full at note 45 *supra* ).

**62.** 44 N.J.Stat.Ann. § 7–14(a).

**63.** 409 U.S. at 415, 93 S.Ct. at 592 ("On its face, the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes."); *id.* at 417, 93 S.Ct. at 593 ("By reason of the Supremacy Clause the judgment below is *Reversed.*")

**64.** Pub.L.No.93–647, § 101(c)(5)(C), 88 Stat. 2359 (1975), *codified at* 42 U.S.C. § 602(a)(26)(A) (quoted at note 5 *supra* ).

**65.** The main reason for the enactment of the Social Services Amendments was Congress's growing concern with the mounting cost of welfare payments to abandoned and deserted children. Bernet, *The Child Support Provisions: Comments on the New Federal Law,* 9 Family L.Q. 491, 497 (1975); *see Hearings on S. 2081 Before the Senate Comm. on Finance,* 93d Cong., 1st Sess. 69 (1973).

**66.** *Peak v. United States,* 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957).

discharge in bankruptcy under the Bankruptcy Act." [67] The policy behind the provision, equally applicable to ERISA, was aptly summarized by the Ninth Circuit in 1976: "[T]he purposes of the maintenance and support exemption would be ill-served by the result sought by the bankrupt, which would jeopardize the continuing viability of the AFDC program and at the same time give tacit encouragement to parents who seek to avoid their duty to support their dependents." [68] Indeed, the spouse will normally profit from the enforcement, as Congress found that "the most effective and systematic method for an AFDC family to obtain child support from a deserting parent is the assignment of the family support rights to the State government for collection." [69] Thus the State's collection of pension funds as a surrogate for the wife is entirely consistent with ERISA's policy of ensuring the well-being of the family unit.

 This case involves a complex array of legal rules and policies, but its facts are simple, and dramatic. For two decades Vivian Cozart, her children, and the State have unsuccessfully sought to enforce George Cozart's elemental support duties. Their efforts should not be thwarted by a literal-minded reading of ERISA. As the Supreme Court cautioned judges eighty years ago, "[a]ll laws should receive a sensible construction," and judicial common sense mandates that "[g]eneral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence." [70] To adopt plaintiffs' strict, confined, and literal interpretation of ERISA's anti-assignment or alienation provisions would not only erode the statutory and common law policy of protecting the security of family dependents, but would lead to manifest injustice that generations of judges have refused to impute to the will of the legislature.

---

67. Pub.L.No.93–647, § 101(a), 88 Stat. 2356 (1975), *codified at* 42 U.S.C. § 656(b). The purpose of Congress was "to assure that the rights of the wife and child are not discharged in bankruptcy merely because the support obligation is a debt to the State." S.Rep.No.93–1356, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 8133, 8153.

68. *Williams v. Department of Social & Health Servs., State of Wash.*, 529 F.2d 1264 (9th Cir. 1976).

69. S.Rep.No.93–1356, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 8133, 8152.

70. *Holy Trinity Church v. United States*, 143 U.S. 457, 461, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892) (Brewer, J.); *see Lau Ow Bew v. United States*, 144 U.S. 47, 59, 12 S.Ct. 517, 520, 36 L.Ed. 340 (1892) (Fuller, C. J.) ("Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention and, if possible, so as to avoid an unjust or an absurd conclusion.").