**In the Matter of Jerry R. GARRISON and Beverly A. Garrison, a/k/a Beverly A. Reynolds, a/k/a Beverly A. Brown, Debtor.**

**Bankruptcy No. 80–02748–H.**

United States Bankruptcy Court,
E. D. Michigan, S. D.

July 17, 1980.

Richard J. Collins, Detroit, Mich., for defendants Jerry R. and Beverly A. Garrison.

Wayne P. Kristall, Pontiac, Mich., for plaintiff Oakland County Friend of the Court.

Before HACKETT, BRODY and PATTON, Bankruptcy Judges.

HARRY G. HACKETT, Bankruptcy Judge.

The Friend of the Court for Oakland County, Michigan filed a motion seeking relief from the automatic stay provided for by Section 362 of the Bankruptcy Reform Act of 1978.

The facts relevant to the controversy are as follows:

On May 20, 1980, debtor Jerry R. Garrison and his present spouse filed an in *pro per* Chapter 13 proceeding in this Court. Prior thereto, the Oakland County Circuit Court in divorce proceedings dissolved a marriage contract between Jerry R. Garrison and Diane Sue Garrison, and incidental thereto ordered the former to pay twenty-five dollars ($25.00) weekly for the support of a minor child of the dissolved marriage. At the time of this motion, Jerry R. Garrison allegedly owed $1,881 directly to his former spouse for the maintenance of the minor child, and $5,098 to the State of Michigan as a result of an assignment by the former spouse to the state for monies advanced by the latter for maintenance and support.

■ At the very outset, it should be noted that the $5,098 obligation due the state admittedly arose as the result of an assignment from debtor's former spouse to the state. Hence, pursuant to Sections 523(a)(5)(A) and 1328(a)(2)[1] of the Bankruptcy Code, the debt is dischargeable. The state does not seek to, nor can it, employ any process to enforce this obligation. The interest the State of Michigan asserts herein is in the right to compel the debtor, through the state's judicial process, to pay pre- and post-bankruptcy child support payments of twenty-five dollars ($25.00) a week due a minor dependent child during the pendency of these Chapter 13 proceedings.

*Post hoc* we confine our remarks and devote our attention to this single issue. But before considering what we feel to be the ultimate issue, we note that either subsection (d)(1) or (f) of Section 362 of the Bankruptcy Code would dispose of the controversy *sub judice*.[2] The former subsec-

---

1. Section 523(a) provides that a discharge under Sections 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt to a spouse, former spouse, or child of the debtor, for alimony, maintenance or support resulting from a divorce decree or separation agreement. But subparagraph (A) of subsection (5) provides that if such debt is assigned to another entity it is dischargeable. Thus if the state were to take steps to enforce this obligation the court would pursuant to Section 105 of the Code and the All Writs Statute 28 U.S.C. § 1654, enjoin such efforts so as to insure to the debtor the benefit of his pending discharge. In addition Section 524 of the Code voids any judgment and enjoins all actions to collect dischargeable debts.

2. Subsections (d)(1) and (f) of Section 362 of the Code provide as follows:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or . . .

(f) The court, without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and hearing under subsection (d) or (e) of this section."

In the matter before the Court, a hearing was held after the notice prescribed by Section 102 of the Code was given, at which time it appeared that the Court could not give the plaintiff dependent child the adequate protection required by Section 361 of the Code. Thus it was necessary to lift the stay, if indeed Section 362 is operative in the case. In this regard, see the Legislative History comment following subsection (d) wherein it is stated that: "The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. As noted above, a desire to permit an action to

tion empowers the court to terminate the stay imposed for cause after notice and hearing, while the latter subsection authorizes the court to lift the stay *ex parte* to prevent irreparable harm to the rights of a party affected by the stay. Thus the court could in this instance, assume that Section 362 is operative, rely upon the provisions of subsections (d)(1) or (f) and terminate the litigation at hand without further comment. But in view of the fact that some serious doubt exists as to whether the stay provided for in Section 362 of the Code, under the present circumstances, automatically stays, either permanently or temporarily, the enforcement of alimony and child support payments, further discussion is mandated.

■ Whether or not Section 362(b)(2)[3] of the Code automatically stays state enforcement of alimony and child support payments due a dependent child or former spouse against debtors who have filed Chapter 13 proceedings depends upon the extent to which Congress intended by Section 1306 of the Code[4] to subject future earnings and after acquired property to the absolute control of bankruptcy courts, to the exclusion of state court decrees providing for alimony and child support. First, child support and alimony obligations due a former spouse or dependent child, as opposed to obligations assigned to the state, can never be discharged in bankruptcy. This is true whether the debtor files under Chapter 7, 11, or 13 of the Code. See Sections 523(a)(5), 1328(a)(2), and 1141(d)(2) of the Code. Then did Congress, by virtue of its definition of "property of the estate", intend the mere filing of a Chapter 13

petition to automatically stay the enforcement of a non-dischargeable debt

Admittedly, the question is a difficult one. On the one hand, we have the broad sweeping and apparently all inclusive language of Sections 362 and 1306, that seemingly, when read together, renders court control over property of Chapter 13 debtors paramount, even to the exclusion of the interest that the several states have in providing for the maintenance and support of divorced spouses and minor children. But at the same time Congress, in apparent sympathy with and in recognition of the states' interest, mandates in Sections 523(a)(5) and 1328 that child support and alimony are nondischargeable debts. Are these seemingly inconsistent policies irreconcilable?

As was stated in *Popovici v. Agler*, 280 U.S. 379, p. 383, 50 S.Ct. 154, p. 154, 74 L.Ed. 489:

"The language so far as it affects the present case is pretty sweeping, but like all language it has to be interpreted in the light of tacit assumptions upon which it is reasonable to suppose that the language was used."

Thus, a proper interpretation of Sections 362 and 1306 of the Bankruptcy Code requires that those sections be viewed in a historical and constitutional context and not abstractly. To do otherwise could well result in a false and misleading interpretation, and a prospective application to the everyday affairs of those affected thereby that would be completely at odds with the Congressional intent.

proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding may bear no relation to the bankruptcy case. In that case it should not be stayed."

3. Subsection (b)(2) provides as follows: "The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate".

4. But on the other hand, Section 1306 of the Code defines property of the estate as: "(a) property of the estate includes, in addition to the property specified in section 541 of this title—(1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of the title whichever occurs first; and (2) Earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7 or 11 of this title, whichever occurs first."

■ From a historical view, both the Constitution[5] and court decisions[6] conclusively hold that the consummation and dissolution of marriages is a matter reserved to the states. In *Popovici v. Agler, supra,* the Supreme Court of the United States held Article III, Section 2 of the Constitution providing for jurisdiction by federal courts over cases affecting Ambassadors, public Ministers, and Consuls and an Act of Congress giving federal courts exclusive jurisdiction over such cases ineffective to deny an Ohio State Court jurisdiction to grant a divorce and order the payment of alimony on behalf of a plaintiff wife who sued her husband who was a Vice-Consul of, and a citizen of, Rumania. The foregoing is representative of a clear intent insofar as the Constitution permits to leave to the states, with as little interference as possible, the exclusive right to regulate the dissolution of marriages and to provide for the maintenance and support of those affected thereby. This view is harmonious with Congressional policy expressed in Sections 523(a)(5) and 1328 of the Bankruptcy Code, which continued the policy in previous bankruptcy legislation, holding child support and alimony obligations exempt from the effect of a bankruptcy discharge.

In this regard, we heed the admonition of the United States Court of Appeals for the Sixth Circuit in *In re Waller,* 494 F.2d 447, p. 452, wherein the Court addressed the effect of new legislation that enlarged the jurisdiction of bankruptcy courts and the effect such enlargement might have on alimony and child support obligations. The Court said:

"The 1970 amendment to the Bankruptcy Act increased the jurisdiction of the Bankruptcy Courts in order to 'effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harrassing creditors'. H.R. Rep., No. 91–1502, 91st Cong., 2nd Sess. 2, U.S. Code Cong. & Admin. News, p. 4156 (1970). The wife was not a harrassing creditor. Inasmuch as the Bankruptcy Court may now render null and void judgments of state courts dealing with the personal liability of a bankrupt (11 USC Sec. 32 (f)), that Court should act with caution in order not to abuse the balance between the state and federal relationship."

To be sure, Congress did intend by enacting the Bankruptcy Reform Act of 1978 to expand the jurisdiction of bankruptcy courts and to enhance the control of those courts over the estates of debtors. But the changes wrought by Section 362 of the Bankruptcy Code, when considered in a historical and constitutional light, were not intended to thwart and impede the enforcement of nondischargeable alimony and child support obligations by the states against those who seek refuge in the bankruptcy courts. Rather, the expanded jurisdiction and the stay provided by Section 362 was

5. Article X of the Constitution of the United States provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the State, are reserved to the States respectively, or to the people". Thus the consummation and dissolution of marriages was not a power delegated to the federal government, nor prohibited by it to the state. Hence, since only the states have the right to regulate the consummation and dissolution of marriages, *a fortiori* the power to determine the responsibilities of the parties to a dissolved marriage to each other and to the issue thereof resides with the states.

6. In *Maynard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1887), p. 205, the Court, by Mr. Justice Field, stated that "Marriage, as creating the most important relation in life, [and] having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effect upon the property rights of both, present and prospective, and the acts which may constitute grounds for dissolution." The right of the states to regulate the consummation and dissolution of marriage is not unfettered. The power must be exercised with due regard to the United States Constitution. See *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010, invalidating a state law prohibiting interracial marriages, and *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 invalidating a state law denying indigents the right to file for divorce because of the inability to pay filing fees.

intended to prohibit disruptive interference in the administration of bankruptcy estates by overzealous private creditors who would engage in the "race of diligence". These sections were not intended to make the bankruptcy courts a sanctuary for those who would avoid alimony and child support obligations. See *Gonzalez Hernandez v. Borgos*, 1 Cir., 343 F.2d 802.[7]

■ Nor was it the intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts—courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors. Indeed, in the case now before us, the debtor through counsel urged the court to reduce his child support payments from twenty-five dollars ($25.00) to twelve dollars ($12.00) a week. Ostensibly, this request was prompted by the realization that the debtor was financially unable to propose and consummate a plan under which he could pay his dischargeable debts and at the same time comply with the state court divorce decree with regard to his nondischargeable child support obligations. We strongly suggest that Congress has, under the Bankruptcy Code, provided a remedy for the dilemma. The debtor has the option of resorting to Chapter 7 proceedings thereby ridding himself of all his dischargeable obligations. This would in turn enable him to dispose of his nondischargeable child support obligations through payment. This, we believe, represents the true intent of Congress as opposed to the staying of child support payments in

reliance on Section 362 of the Code. Additionally, the foregoing is consistent with the pronouncement of the Supreme Court in 1904 in *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390, quoting an Illinois case. The Court noted at 196 U.S. pp. 73–74, 25 S.Ct. at p. 174 that:

"The liability to pay alimony is not founded upon a contract, but is a penalty imposed for a failure to perform a duty. It is not to be enforced by an action at law in the state where the decree is entered, but is to be enforced by such proceedings as the Chancellor may determine and adapt for its enforcement. It may be enforced by imprisonment for contempt, without violating the constitutional provision prohibiting imprisonment for debt. The decree for alimony may be changed from time to time by the Chancellor and there may be such circumstances as would authorize the Chancellor to even change the amount to be paid by the husband, where he is in arrears in payment required under the decree. Hence, such alimony cannot be regarded as a debt owing from husband to the wife, and, not being so, cannot be discharged by an order in the Bankruptcy Court."

If we were to impute to Section 362 of the Code the meaning urged by the debtor herein, we would effectively thwart the enforcement of state court divorce decrees which make provision for alimony and child support payment.

■ We hold, therefore, that the mere filing of a debtor's petition does not automatically stay the enforcement of alimony and child support obligations. This is not to

---

7. Section 1325(a)(3) provides that in order for the court to confirm a Chapter 13 plan, the plan must have been proposed in good faith and not by any means forbidden by law. As was noted earlier in the body of this opinion, the debtor herein sought to have his child support payments reduced from twenty-five to twelve dollars a week. In the *Gonzalez Hernandez* case cited above, the United States Court of Appeals for the First Circuit held that a plan of arrangement which reduced child support payments of $600 per month to $500 per month had the effect of giving to the debtor, under the color of the Bankruptcy Act, a means of avoiding enforcement of his child support obligation. Accordingly, the court held that the plan had not been filed in good faith and could not be confirmed. As previously noted, Section 1325(a)(3) of the Bankruptcy Code requires Chapter 13 plans to be filed in good faith if they are to be confirmed. Thus, if the court were to stay Michigan's enforcement of the debtor's child support obligation under Section 362 of the Bankruptcy Code, the child support arrearage would increase and the court would be compelled to deny confirmation of the plan because it was not proposed in good faith. The foregoing would substantially prejudice the interest of the State of Michigan and the debtor's dependent child.

say, however, that once a bankruptcy court has confirmed a Chapter 13 plan and subjected future earnings of a debtor to court control, state authorities may disrupt and thwart the Chapter 13 proceeding by the issuance of process against the debtor or his future earnings. Thus, in holding that the institution of a Chapter 13 proceeding does not automatically stay enforcement of nondischargeable alimony and child support obligations, our ruling is limited to those instances where the decree of the state court fixing alimony or child support precedes the order of the bankruptcy court confirming a plan in Chapter 13 proceedings. The foregoing, in our view, is consistent with the authorities cited herein, both constitutional and otherwise, and also accurately reflects the Congressional intent of Section 362 of the Bankruptcy Code.

PATTON, Bankruptcy Judge (concurring).

Section 362 provides broad relief for a debtor from collection attempts by creditors. We are not convinced, however, that the Section 362 stay was intended to block the collection of alimony, maintenance and child support payments in a case filed under Chapter 13 of the Code after judgment has been entered in state divorce proceedings. The Code reflects a strong policy against its being used by a debtor to avoid such obligations.

In *Wetmore v. Markoe, supra,* the Court enunciated a principle of statutory construction which can give guidance in this situation. In deciding that an alimony judgment could not be discharged, it noted:

"The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife (sic) and children of support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligations and responsibilities which may have resulted from business misfortunes. Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral or legal, devolved upon the husband to support his wife and to maintain and educate his children." 196 U.S. at 77, 25 S.Ct. at 176.

This principle remains viable in the context of modern bankruptcy law. Its application in this situation is consistent with recent decisions construing federal statutory enactments so as not to interfere with state enforcement of support obligations. *American Tel. & Tel. Co. v. Merry,* 592 F.2d 118 (2nd Cir. 1979). *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y. 1978). *Cody v. Rieker,* 454 F.Supp. 22 (E.D.N.Y. 1978).

*A. T. & T. v. Merry, supra,* is particularly persuasive. In that case, the court found that a state court ordered garnishment to satisfy family support payments was not blocked by provisions of ERISA preempting state law and proscribing alienation of assignment of pension benefits accumulated under that federal statutory scheme. The court rejected a literal statutory interpretation of the ERISA provisions and found that the enforcement actions taken were "impliedly excepted" from the restrictions. 592 F.2d at 121.

In reasoning similar to that contained in *Wetmore,* the court in the *A. T. & T.* case, quoting *Cartledge v. Miller, supra,* relied on the "fundamental principle of statutory interpretation (whereby) courts have presumed that the basic police powers of the states, particularly the regulation of domestic relations, are not superseded by federal legislation unless that was the clear and manifest purpose of Congress." 592 F.2d at 122.

These principles of statutory construction seem particularly applicable to one of the questions in the case at bar. We are faced with a statutory proscription which, if read strictly and literally, could well pose a sub-

stantial impediment to the already difficult task faced by the states in enforcing family support obligations. We do not think Congress intended this result. Failing to find such Congressional intent, a construction of such obligations in the control of the states is mandated. Absent clear and explicit Congressional direction, we believe it unwise to alter the balance between state and federal functions which exists in this area.

BRODY, Bankruptcy Judge, participated in the hearing but took no part in the decision of this case.