RENEE THORNTON CARAFA D'ANDRIA, Formerly RENEE THORNTON HAGEMAN, Respondent, v. RICHARD HAGEMAN, Appellant.

First Department, March 18, 1938.

*Edward E. Hoenig* of counsel [*William M. Sullivan*, attorney], for the appellant.

*Samuel Meyers* of counsel [*Morris & Samuel Meyers*, attorneys], for the respondent.

UNTERMYER, J. The parties to this action, formerly husband and wife, were divorced in the State of Washington on March 27, 1928. The decree of divorce contained no provision for the support of the wife apparently because, on November 2, 1927, while living separate and apart, the parties had entered into a written agreement the provisions of which will be hereafter referred to. It is upon the effect of that agreement, as modified in certain particulars on October 28, 1929, that this controversy depends.

The complaint is predicated on these agreements. It is alleged that thereunder the defendant agreed to pay to the plaintiff in consideration of his obligation of support and maintenance the sum of $60,000, with interest from November 2, 1927, at six per cent per annum, payable in the amounts and at the times stated therein. It is further alleged that between November, 1927, and January, 1930, pursuant to these agreements, the defendant paid to the plaintiff $10,000, but that he has since failed to make any payments and has repudiated his obligations thereunder. Accordingly, the plaintiff claims that there is due the sum of $50,000, with accrued interest from November 2, 1927.

The defense relied upon is that the plaintiff was included by the defendant as one of his creditors in schedules filed by him in bankruptcy proceedings in 1936; that the plaintiff filed proof of claim for the balance alleged to be due under the contract, and that subsequently, by an order of the United States District Court for the Southern District of New York, made on October 21, 1936, the defendant was discharged from all debts and claims provable against him. In those proceedings the plaintiff alleged that the consideration for the defendant's obligation was " actual money loaned to bankrupt 1920 to 1926," as evidenced by a promissory note. Again, in a letter to the referee in bankruptcy, she wrote: " When I divorced him I demanded no alimony * * *. When

we separated I felt it only fair to demand the return of actual money I put into his career — nothing else."

The question presented is whether the defendant's obligation, created by the agreement of November 2, 1927, was discharged by the bankruptcy. The agreement recites that, previous to November 30, 1926, the plaintiff had loaned to the defendant, or expended for his benefit, the sum of $61,000; that on that day the defendant had executed an instrument acknowledging the debt, which he agreed to repay, without interest, at the rate of $3,000 a year, upon account of which he had already made payments of $1,000. Then follow these recitals:

" WHEREAS certain irreconcilable differences have arisen between said Richard Hageman and his wife Renee Thornton Hageman which have resulted in a separation, and permanently separate domiciles, and the consideration of court procedure by Renee Thornton Hageman to attempt to terminate the bonds of matrimony; and

" WHEREAS the parties hereto desire to make present and permanent arrangement and agreement between themselves of all financial matters, regardless of any court proceedings ever taken at any time, or the outcome thereof, or regardless of any possible later adjustment of their differences; and

" WHEREAS it is mutually agreed between the said Richard Hageman and the said Renee Thornton Hageman that the above mentioned obligation of Richard Hageman to pay his wife Renee Thornton Hageman the sum of $61,000 without interest (upon which there now remains unpaid approximately $60,000) be cancelled and annulled and a new obligation substituted in lieu thereof which shall provide for the repayment of the said $60,000 balance now unpaid, and shall further provide for the payment of interest thereon, in the place and stead and in lieu of all payments for the maintenance and support of the said Renee Thornton Hageman, or for any other purpose, in the manner and amounts hereinafter provided."

The agreement then provides that the defendant shall pay to the plaintiff the sum of $60,000, with interest at six per cent commencing November 1, 1927, by weekly payments during each year, terminating on October 31, 1947. Thus the debt was to be extinguished at the rate of $3,000 a year, with interest on all unpaid balances. It was further provided:

" Upon making the foregoing payments Richard Hageman shall have discharged in full his entire indebtedness to Renee Thornton Hageman and shall be under no obligations to make any further payments to her for any purpose whatsoever. Richard Hageman

shall have the right to anticipate any or all of the above payments, in which case he will be entitled to a proper interest credit for all anticipated payments at the rate of 6% per year.

" It is mutually agreed that the note or written obligation of Richard Hageman dated November 30, 1926, to pay Renee Thornton Hageman $61,000 is cancelled and annulled; and that the foregoing payments to be made by Richard Hageman as specified in paragraph First hereof shall be in lieu of said obligation, and also in lieu of any and all payments for maintenance and support or for any other purpose whatsoever."

The final paragraph provides: " In case of the death of Renee Thornton Hageman before the completion of the payments herein specified by Richard Hageman, the benefits of this contract belonging to Renee Thornton Hageman shall pass to her estate or to such person or persons as she shall designate in her will to receive the same."

The plaintiff's motion for summary judgment rests on the contention that the agreement of November 2, 1927, is " for maintenance or support of wife " and is, therefore, not affected by the defendant's discharge in bankruptcy. (Bankruptcy Act, § 17;* *Wetmore* v. *Markoe*, 196 U. S. 68; *Dunbar* v. *Dunbar*, 190 id. 340.) The defendant's motion for like relief is made upon the theory that the agreement is for the repayment of moneys loaned, and was thus a debt discharged by bankruptcy. We think, on the admitted facts, the agreement is not precisely of either character, but that it consisted of an agreement by the plaintiff to relinquish any claim for support and maintenance if the defendant should pay the sum for which he was indebted. Thus, in a sense the contract involved the payment of a debt since payment would discharge the indebtedness. In a sense it involved a contract for the maintenance or support of the plaintiff since the defendant, in making payment of the debt, would be released also from that obligation. No doubt this was on the theory that if the defendant paid the debt, the plaintiff, with the proceeds, would be able to support herself. The question now presented is whether a contract which commingles two such obligations is discharged by bankruptcy even if it be assumed that plaintiff's right to support, enforcible by proceedings to modify the decree of divorce in the State of Washington or by section 137 of the Domestic Relations Court Act, would then revive.

It cannot be disputed that the defendant's indebtedness to the plaintiff as it existed previous to November 2, 1927, would have

---

* See U. S. Code, tit. 11, § 35.— [REP.

been discharged by the bankruptcy. When the parties agreed, however, that payment of the indebtedness should serve to release the defendant from his duty to support the plaintiff it no longer constituted payment of a simple debt, for the debt had been converted into a contract " for the maintenance or support of wife " within the purview of section 17 of the Bankruptcy Act. The situation thus created is hardly to be distinguished from *Blackstock* v. *Blackstock* (265 Fed. 249) where the bankrupt's note payable to a third party, accepted by the wife in satisfaction of her claim for support and maintenance, was held not to be discharged by bankruptcy. Similarly, it was decided (at a time when section 17 allowed the discharge in bankruptcy of damages for the breach of a contract to marry but not of damages for seduction) that where a judgment for breach of promise included damages for seduction, no part of the judgment was affected by the discharge. (*Mohler* v. *Norris*, 291 Fed. 571; *Matter of Warth*, 200 id. 408.) In *Matter of Ridder* (79 F. [2d] 524) a contract between husband and wife combined a stipulation by the wife to discontinue an action pending against a third party and a property settlement, with an agreement by the husband for the support of his wife and children. It was held that such an agreement was not affected by the husband's bankruptcy.

The appellant asserts that the contract cannot be regarded as an agreement for the support of the wife because, upon her death, it inures to the benefit of her estate. But, unlike alimony, an agreement intended for support and maintenance need not terminate on the death of the party to be supported and maintained. Indeed, such an agreement may provide for a single payment to be made in satisfaction of the claim. Yet it is manifest that the covenant would not be discharged if the wife should die before the stipulated date for performance had arrived.

The judgment and orders should be affirmed, with costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment and orders unanimously affirmed, with costs.