In the Matter of Robert K. Golden, Bankrupt.

Robert K. GOLDEN, Plaintiff-Appellant,

v.

Renee GOLDEN, Defendant-Appellee.

No. 74 B 1881.

United States District Court, S. D. New York.

Feb. 25, 1976.

George Friedman, New York City, for plaintiff-appellant.

Gelbwaks & Pollack, New York City, for defendant-appellee; Aaron Gelbwaks, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

This is an appeal by Robert K. Golden (petitioner), a voluntary bankrupt, from a determination by the Bankruptcy Judge that certain obligations due to Ruth Golden, his former wife (respondent), pursuant to a judgment entered against the bankrupt in the Family Court, Kings County, New York, consti-

tuted alimony and support and were not debts dischargeable in bankruptcy.[1] Golden filed his voluntary petition in bankruptcy on December 31, 1974, two weeks after his ex-wife recovered the judgment against him in the Family Court.

Shortly before their divorce, the Goldens entered into a separation agreement on February 3, 1961, which obligated the husband to pay a stipulated sum for the support of their minor son and $35 per week alimony. Golden defaulted in his obligations, as a result of which, based upon proceedings in the Family Court, a warrant for his arrest was issued. Subsequently, in October 1967, judgments for arrears were entered against him in the total sum of $13,126.

Thereafter, on March 1, 1968, the parties entered into a second agreement, which cancelled the prior agreement. The second agreement was incorporated by reference in an order entered by the Family Court on March 14, 1968, which specifically directed the parties to comply with its terms. Among other matters, the order of March 14, 1968 vacated an outstanding order for Golden's arrest and also a prior contempt order for failure to pay for the support and maintenance of the wife and child, and directed that Golden pay arrears of alimony and child support totaling $13,126 in installments. Pursuant to its terms, the wife waived her right to future alimony; support and maintenance of the son was to be continued at specified monthly rates. The order further provided that in the event of Golden's default of more than ten days in making any payment required thereunder, he was to pay $5 per day for each day of default, and after thirty days of continued default his obligation to pay alimony of $35 per week under the first separation agreement was revived.

Golden failed to comply with the terms of the order of March 14, 1968.

The respondent herein then commenced another proceeding in the Family Court for recovery of arrears for support due her and the infant son and for their continuing support. On December 11, 1974 the Family Court entered an order which adjudged that Golden's failure to make the payments as directed by the March 14, 1968 order was wilful, and judgment was entered against him for arrears of support due to his former wife and their infant son in the aggregate sum of $35,086. Of this sum, $9,060 was for "revived alimony" of $35 per week, and $8,960 was for default payments of $5 per day. These are the items that are here at issue.

Bankruptcy Judge Babitt rejected the bankrupt's contention that those amounts were dischargeable as "simple contractual debts owed by a husband to his former wife," which do not constitute support. He held that the revived alimony and default items were debts for alimony, maintenance and support and therefore nondischargeable under section 17(a)(7) of the Bankruptcy Act. Judge Babitt further ruled that even if the $5 per day default item was a penalty, it was nondischargeable and not so excessive as to violate public policy, and in any event its enforcement was a matter to be considered solely by the state courts.

The language of the Family Court judgment of December 17, 1974 is clear and explicit that the total sum of $35,086 represents "arrears of support due" the wife and the parties' infant son. Despite this unequivocal language, the bankrupt contends that the amounts for the revived alimony of $35 per week and the $5 per day payable upon his default, or a total of $18,020, have no relationship to the support of respondent.

He urges that this Court look behind the Family Court judgment and find that other provisions of the parties' agreement amply provided for the ex-

---

1. § 17(a)(7) of the Bankruptcy Act, 11 U.S.C. § 35(a)(7), provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are for alimony due or to become due, or for maintenance or support of wife or child . . . .."

wife's support and that the provisions for revived alimony and default payment constitute "simple contractual obligations" in the nature of liquidated damages or a penalty and are therefore nondischargeable. He analogizes the instant situation to cases holding that debts due under divorce decrees or separation agreements may be discharged where they derive from property settlements rather than support obligations.[2] In sum, petitioner contends that the items here at issue, no matter how described by the parties or in the judgment of the Family Court, do not represent support obligations but are "mere contractual debts" which are dischargeable.

The first flaw in this contention is the failure to recognize that the contractual obligations were incorporated by reference in the Family Court order of March 14, 1968, which directed the parties to comply with its provisions, and as an incident thereof vacated a warrant for his arrest and a contempt order for petitioner's failure to provide support for his wife and child. The further difficulty with his contention is the failure to recognize that all of the sums due under the judgment, including those at issue here, have their genesis in that failure and his continuing obligation to support his wife and child. The so-called "penalty" provisions, no less than the other provisions of the 1968 agreement, were part and parcel of the consideration to and accepted by Mrs. Golden and directed by the Family Court in fulfillment of that obligation.[3] These were all interlaced to assure that that obligation would be observed. All were founded upon petitioner's duty of maintenance and support. Petitioner would fragmentize the Family Court's order and have this Court decide which payments were in fact essential for respondent's support and which, by their contingent and cumulative nature, were not essential. However, not every debt "for alimony . . . maintenance or support" within the meaning of section 17 of the Bankruptcy Act must fit petitioner's restrictive formulation. The essential purpose of the obligation must be considered. Courts have held that payments due under the provisions of separation agreements that defer certain installments until after the death of the wife may nevertheless be nondischargeable.[4] The test, in short, is not the actual use to which the money would have been put had the bankrupt lived up to his matrimonial obligation, but whether the debt was incurred or its payment directed in discharge of that obligation.[5]

In the original agreement the wife was to receive $35 per week alimony, which petitioner failed to pay and as a result of which he was held in contempt and ordered arrested. In the second agreement respondent yielded the enforcement and contempt powers of the Family Court to compel petitioner's compliance with his obligation to support her; she also waived the $35 per week alimony in the future but only so long as the bankrupt kept current in his payments of the past arrears. The petitioner agreed and the Family Court directed that in the event he failed to do so his obligation to pay the previously fixed al-

2. *See, e.g., Tropp v. Tropp*, 129 Cal.App. 62, 18 P.2d 385 (1933); *Fernandes v. Pitta*, 47 Cal. App.2d 248, 117 P.2d 728 (1941). *See also Caldwell v. Armstrong*, 342 F.2d 485, 488 n. 5 (6th Cir. 1965).

3. *Cf. In re Adams*, 25 F.2d 640 (2d Cir. 1928) (L. Hand, J.): "[T]he sum of all the payments . . . was to be paid and accepted in full for that support and maintenance only which could be exacted by recourse to law."

4. *In re Adams*, 25 F.2d 640, 642 (2d Cir. 1928) (dictum). *Cf. D'Andria v. Hageman*, 253 App.

Div. 518, 2 N.Y.S.2d 832, 835–36 (1st Dep't), *aff'd mem.*, 278 N.Y. 630, 16 N.E.2d 294 (1938); *Krupp v. Felter*, 191 Misc. 726, 77 N.Y. S.2d 665, 667 (Sup.Ct.), *aff'd mem.*, 274 A.D. 761, 80 N.Y.S.2d 725 (1st Dep't 1948).

5. *In re Ridder*, 79 F.2d 524 (2d Cir. 1935), *cert. denied*, 297 U.S. 721, 56 S.Ct. 599, 80 L.Ed. 1005 (1936); *In re Adams*, 25 F.2d 640 (2d Cir. 1928); *In re Baldwin*, 250 F.Supp. 533 (D.Neb. 1966); *D'Andria v. Hageman*, 253 App. Div. 518, 2 N.Y.S.2d 832, 835–36 (1st Dep't 1938); *Krupp v. Felter*, 191 Misc. 726, 77 N.Y.S.2d 665, 667 (Sup.Ct.1948).

riod. It was within the court's power, which it exercised in this instance, to direct variable rather than constant fixed payments, depending upon the circumstances. The increased payments were based upon and derived from petitioner's marital duty of support. The wife's forbearance in accepting a lesser sum if petitioner lived up to his commitments did not destroy the basic nature of the obligations which were revived upon petitioner's default. The wife did not relinquish her right to nondischargeable alimony or maintenance and support because she was willing to forego a portion of it if petitioner was current on payment due.

The debts are for "alimony . . . maintenance or support" and it does not matter whether they are described as "revived alimony," "incentives" or "penalties." While this Court has the power to look behind the Family Court judgment and examine the nature of the underlying debt to determine dischargeability,[6] it cannot ignore the agreement of the parties themselves and adopted by the Court that the so-called "penalty" provisions were an interlaced part of the petitioner's marital obligation. Moreover, the agreement's incorporation in the 1968 decree of the Family Court, with the specific direction for its compliance, necessarily carried with it the judicial determination that the contract as a whole "constitute[d] such suitable provision for wife and chil[d] 'as justice requires . . ..'"[7] In sum, upon this record the Court concludes that the debts at issue were incurred for "alimony . . . maintenance or support," and are nondischargeable.[8]

The order of the Bankruptcy Judge is affirmed in all respects.

---

**6.** *Wetmore v. Markoe,* 196 U.S. 68, 72, 25 S.Ct. 172, 49 L.Ed. 390 (1904). *Cf. Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

**7.** *Goldman v. Goldman,* 282 N.Y. 296, 302, 26 N.E.2d 265, 268 (1940).

**8.** Petitioner's suggestion that the Family Court was without jurisdiction to award the judg-

ment at issue here is without merit. In granting the judgment the Family Court was not entering a new support order but enforcing the terms of its previous decree. The judgment was based on currently effective support or alimony provisions. *See Silver v. Silver,* 36 N.Y.2d 324, 367 N.Y.S.2d 777, 327 N.E.2d 816 (1975).