**In re Janet M. LEVER, aka Janet M. Curtin, Debtor.**

**Karen D. LAWSON, Plaintiff,**

**v.**

**Janet M. LEVER, Defendant.**

**Bankruptcy No. B90–16122.
Adv. No. B91–1175.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Oct. 18, 1991.

See also, 137 B.R. 243.

Harvey S. Morrison, Cleveland, OH, for plaintiff.

Stephen J. Futterer, Eastlake, OH, for debtor/defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In a matter of apparent first impression in this District and Circuit, the Court is asked to determine whether fees awarded to a guardian *ad litem* (GAL) by a state domestic relations court are dischargeable in bankruptcy. Following a trial proceeding, the Court's findings of fact and conclusions of law are set forth below.

Janet M. Lever (Defendant–Debtor) and Brian F. Lever were married in Lakewood, Ohio on September 11, 1982. To that marriage, one child, Lauren C. Lever, was born on April 15, 1986. Subsequently, on October 7, 1988, the Levers were granted a decree of divorce (Jt.Ex. 6). During the pendency of the divorce proceedings, the Debtor filed a motion for appointment of GAL, and a motion for a psychological examination (Jt.Ex. 1). Thereupon, Karen D. Lawson (Plaintiff) was appointed by the domestic relations court to serve as the GAL representing the interests of the minor, Lauren C. Lever, (Jt.Ex. 2).

The GAL appointment order obligated the Levers to share, equally, the costs of the GAL and the psychological examination. The Plaintiff's initial invoice for GAL services totalled $880.00, of which Brian Lever paid $440.00. The Debtor's share remains unpaid. In January of 1989, child visitation problems arose between the divorced Levers, and the Debtor filed a motion to modify visitation and for reinstatement of the GAL (Jt.Ex. 3). In July of 1989, an agreed order was signed by the Levers which reappointed the Plaintiff as GAL, *inter alia.* By that time, the Plaintiff's GAL fees had accrued to an amount of $2,610.00, of which one-half ($1,305.00) was paid by Brian Lever.

In response to a motion filed by the Plaintiff to have the Debtor found in contempt for failure to pay her share of the GAL fees, the state court ruled that the Debtor was in contempt of a court order (Jt.Ex. 5). The Debtor's total share of the GAL fees was $1,745.00, of which $120.00 was paid by the Debtor leaving a balance of $1,625.00. No payment has been made on the GAL fees by the Debtor since the state court's contempt ruling was issued on September 13, 1990. On December 21, 1990, the Debtor filed her voluntary petition seeking relief under Chapter 7. The Plaintiff's complaint contesting the attempted discharge of her $1,625.00 GAL fee ensued.

■ The single issue for the Court's determination is whether fees awarded to a GAL, are dischargeable under the Bankruptcy Code. In support of her complaint, the Plaintiff, Karen Lawson, contends that, while the GAL fees are not paid directly to a spouse or child, the GAL fees in question are nevertheless in the nature of support and were beneficial to the child thereby making the fees nondischargeable under § 523(a)(5) of the Bankruptcy Code. The Defendant–Debtor contends, however, that, although the Plaintiff was appointed as the GAL on a visitation issue, she provided unauthorized services to the minor child as she acted in her own interest in post-decree contempt proceedings. The Debtor further argues that the Debtor was the child's legal custodian at all times and that her ex-husband, Brian, was obligated to pay child support.

Under § 523(a)(5) of the Code [11 U.S.C. 523(a)(5) ], the Congress addressed the dischargeability of debts which emanate from a

divorce proceeding. Therein, the following is noted:

§ 523. Exceptions to discharge.

(a) A discharge under section 727—of this title does not discharge an individual debtor from any debt—

— (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record.... [11 U.S.C. 523(a)(5) ].

An understanding of applicable state law is also necessary to appreciate the authorization and duty of a court-appointed GAL. In this regard, Rule 75(B)(2), Oh.R.Civ.P., is helpful:

R.75(B)(2):

When it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for such child and tax the costs thereof—. Rule 75(B)(2), Oh.R.Civ.P.

Under the Ohio Revised Code, the duty of a GAL is addressed as follows:

R.C. § 2111.23 Guardian ad litem.

Whenever a ward, for whom a guardian of the estate or of the person and estate has been appointed, is interested in any suit or proceeding in the probate court, such guardian shall in all such suits or proceedings act as guardian ad litem for such ward, except as to suits or proceedings in which the guardian has an adverse interest. Whenever a minor or other person under legal disability, for whom no guardian of the estate or of the person and estate has been appointed, is interested in any suit or proceeding in such court, the court may appoint a guardian ad litem. In a suit or proceeding in which the guardian has an adverse interest, the court shall appoint a guardian ad litem to represent such minor or other person under legal disability. R.C. § 2111.23.

Also under Ohio Revised Code § 2151.28.1(B)(1), it is noted that

The court shall appoint a guardian ad litem in any proceeding concerning an alleged abused or neglected child....

In that same section of the Ohio Revised Code, it is further noted in subsection (D) that the court may fix compensation for the GAL. Subsection (H) of § 2151.28.1 provides that the GAL, if a duly licensed attorney, may also serve as counsel to the ward unless the court finds the existence of a conflict. Finally, subsection (I) describes the scope of the GAL's duties in the following manner:

(I) The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interests of the child, including, but not limited to investigation, mediation, guardian, monitoring court proceedings, and monitoring the services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child. The guardian ad litem shall be given notice of all hearings, administrative reviews, and other proceedings in the same manner as notice is given to parties to the action.

In Ohio, Juvenile Rule 2(10) defines a GAL as being "a person appointed to protect the interests of a party in a juvenile court proceeding." As defined by Black's Law Dictionary, "a guardian ad litem is a special guardian appointed by the court to prosecute or defend, in behalf of an infant or incompetent, a suit to which he is a party, and such guardian is considered an officer of the court to represent the interests of the infant or incompetent in the litigation." Black's Law Dictionary 635 (5th ed. 1979). This definitional framework is significant to a determination of whether the fees owed to a GAL are actually in the nature of support. If deemed to be in the nature of support, they would be nondischargeable pursuant to § 523(a)(5) of the Bankruptcy Code.

In arriving at a resolution of this matter, an examination of the exceptions to discharge under § 523(a)(5) is warranted. The Bankruptcy Act of 1898 did not expressly provide

an exception from discharge of alimony, maintenance or support of a debtor's wife or children, (See, Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, as amended [1].) although the U.S. Supreme Court held that a debtor husband's natural legal duty to support his wife was nondischargeable. *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901). In 1903, however, Congress amended the Bankruptcy Act of 1898 to provide that alimony due, or to become due, or maintenance or support of wife or child was nondischargeable. This was codified in § 17(a)(7) of the Act which provided, in relevant part:

§ 17(a)(7):

A discharge in bankruptcy shall release a bankrupt from all of his provable debts whether allowable in full or in part, except such as ... (7) are for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female or for breach of promise of marriage accompanied by seduction, or for criminal conversation.

Section 523(a)(5) is a derivative of the former § 17(a)(7) of the Bankruptcy Act of 1898. Section 17(a) of the Act applied only to "provable" debts. In this regard, it is interesting to note that the Act did not consider obligations to support a wife or child as being debts. As such, they needed not be proved. The concept of "provability" was not incorporated into the present Bankruptcy Code. (*Id.*) Under § 502 of the Code, all claims asserted against a debtor's estate are deemed allowed, unless timely objected to.

■ At bar, a GAL's fee is the subject of dischargeability under § 523(a)(5). The burden of proof required to establish the nondischargeability of a debt under § 523 is upon the objectant. Rule 4005, Bankr.R. The burden must be carried by a fair preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As regards the allegation of support, § 523(a)(5) requires the debt to be actually for or in the nature of support. In resolving this issue, it is the substance of the liability, as opposed to its form, which matters. *Pep-*

*per v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). An examination of the separation agreement entered into between the Levers contains a provision requiring Brian Lever to pay certain child support, with the Debtor having sole custody of the minor child. That document contains no specific reference to GAL fees. (Jt.Ex. 6). The lack of a reference to GAL fees in the separation agreement, however, is not conclusive as to the dischargeability of this particular debt. The test is whether the debt was incurred or its payment directed in the performance of a support-type activity. *See, Golden v. Golden*, 411 F.Supp. 1076 (S.D.N.Y.); *aff'd.*, 535 F.2d 213 (2d Cir.1976).

Since the divorce decree and separation agreement are silent respecting the GAL fees, the Bankruptcy Court, although not bound by state law, may consider applicable state law and consider admitted extrinsic evidence to decide whether a support function is rendered by the GAL. *In re Kiggins*, 26 Bankr. 821 (Bankr.N.D.Ohio 1983).

The testimony of the Debtor, Janet Lever, was credible. She moved the Court for appointment of a GAL in order to resolve certain visitation and custodial issues between herself and her former spouse (Jt.Ex. 1). That motion was approved (Jt.Ex. 2). She later filed a motion to modify the visitation rights and to reinstate the GAL. The judgment entry approving this second motion was an agreed entry between herself and her former spouse (Jt.Ex. 4). She testified unequivocally that she consented to the terms of the judgment entry and signed it. The effect of this second judgment entry reappointed the former GAL (Plaintiff), provided for the parties to divide the GAL's fees equally, and ratified the GAL's prior services rendered on behalf of the minor child. She not only consented to the language of the judgment entry relating to her motion to reappoint the GAL, she also testified that she knew she was responsible for one-half of the fees.

---

1. Ravin and Rosen, The Dischargeability in Bankruptcy of Alimony, Maintenance and Support Obligations, Am.Bankr.L.J., Vol. 60 Winter 1986.

The Debtor's second divorce counsel, Joan Sebelin, offered credible testimony which revealed that she prepared the judgment entry which initially caused the appointment of the GAL. She further testified that she is familiar with the services of a GAL, as used by domestic relations courts, and stated that the Plaintiff performed the services usually performed by a GAL and that the Plaintiff was involved throughout the several proceedings to protect the interest of the minor child (Sebelin, Direct). Even the Debtor's third retained divorce counsel, David Patterson, testified that the minor child was two years old at the time of divorce, and the services performed by the Plaintiff were typical of those performed by GALs (Patterson, Direct). He further testified that the entry reflected the agreement of the Debtor and her former spouse (Jt.Ex. 4). He explained that the "prior conduct" language in the judgment entry referenced a three-month period where the Plaintiff served as GAL without court appointment. It is undisputed that all parties were present at the time that the reappointing judgment entry was signed and entered. His testimony was substantially corroborated by that of Brian Lever's counsel. (Cantor, Direct).

The testimony of Beth Zone was both credible and relevant. Ms. Zone serves as the director of the GAL program in Cuyahoga County. She adequately explained the duties of a court-appointed GAL to include the following: attendance at any hearings held in a case; becoming involved in custodial, visitation, alimony and child support concerns; contacting both parties to the divorce proceeding; visits with the minor child to observe and interview, where practicable; interviewing the child's relatives; and maintaining a time log, among other duties. In some instances, she testified, GAL fees have been required to be paid in the form of child support. She further testified that she had no first hand knowledge of the case at bar, nor its parties, and was unfamiliar with the GAL program in Lake County, Ohio. (Ms. Zone, direct).

Carol Mosher, an attorney-at-law and former judge in Lake County, Ohio provided expert testimony with respect to the Plaintiff's services and fees as a GAL. She was not only familiar with the services rendered by the Plaintiff in the instant case, but serves as a GAL herself. Although the Plaintiff is an attorney, the services she provided the minor child were those of a GAL. Of remarkable note, she testified that GAL fees are sometimes taxed as costs. Her testimony was credible and reflected she has handled hundreds of cases in the Lake County domestic relations court. (Mosher, Direct).

Another witness who provided expert testimony on behalf of the Plaintiff was Dr. Barbara Garwood, a psychologist and professor of school and clinical psychology. As tendered, the parties stipulated to her providing expert testimony on visitation, custody, and child relationships with parents and extended family. She testified that she has provided expert testimony in fifty cases relating to child custody in Lake County and has served as a GAL in one case within Lake County. Her testimony revealed that there is a need for an independent person who can relate to the minor child, and a GAL plays a crucial role in this regard due to a child's fragility. The focus of the GAL's duty is that which reflects the best interest and welfare of the minor child. An effective GAL will address all aspects of the child's life. She further testified that a GAL can be particularly effective in negotiating child custody disputes with the parties. She had no specific knowledge of the guardian appointment orders in this case, nor was she familiar with the Debtor or the Debtor's child. (Garwood, Direct/Cross).

The Plaintiff, Karen Lawson, is an attorney by profession and was solely appointed to serve the minor child as a GAL. She testified that she was never appointed to serve as legal counsel in the matter. She does a substantial amount of domestic relations work in her legal practice and has served as a GAL hundreds of times, according to her testimony which was credible. She testified that she became involved in the case when she was contacted by the Debtor who alleged that her former spouse or his brother had sexually abused her minor child. The Debtor initiated the appointment of a GAL; she was appointed to serve, and is

presently owed $1,625.00 in fees by the Debtor. Her testimony further revealed that GAL fees can be taxed as costs when ordered by the court but, in this case, the costs were taxed differently from the GAL fees. Everything she did on behalf of the minor child as GAL pertained to the child's maintenance and support, according to her testimony.

An examination of the Plaintiff's fee applications (Jt.Exs. 7 and 8) revealed meetings and telephone conferences she had with the minor child's parents and the parents' legal counsel; her attendance at the trial, negotiations and settlement conferences; conversations with investigators at the Lake County Human Services Department; review of pleadings pertaining to custody and visitation issues; attendance at conferences at the Juvenile Court with counsel; reviewing police reports; attending deposition sessions; home visitation with the child's father; observation of the child with other family members; and contacting court personnel on related issues. All of these work activities were in the nature of support for the minor child.

During the course of the Debtor's case-in-chief, she testified that she sought the appointment of a GAL for the minor child in response to her former spouse's motion for a change of temporary custody. Later, her former spouse sought appointment of a GAL. During the divorce and post-decree proceedings, she was employed at a day care center. She is a college graduate, with a degree in elementary education.

Throughout those proceedings, the Debtor had custody of the minor child at all times, and her former spouse paid child support payments. At one point in time during the post-decree hearings, she was on welfare. Her testimony further revealed that she agreed to divide equally the costs of the GAL with her former husband and paid about $120.00 towards her share of the costs. She agreed to the Plaintiff's reappointment and never filed a motion to relieve the Plaintiff of her services, while understanding that it was the Plaintiff's job, as GAL, to work in the child's best interest. (Janet Lever, Direct/Cross).

■ In this Circuit, the *Calhoun* case has served as the most significant judicial authority regarding the dischargeability of debts which are "in the nature of support." In that case, the Sixth Circuit had to determine whether a debtor's assumption of joint debts and the undertaking to hold a former spouse harmless as part of a marriage separation agreement constitutes support or alimony payments to the former spouse resulting in nondischargeable debts under 11 U.S.C. § 523(a)(5). *Calhoun, supra,* at 1106. Agreeing with the Second Circuit's decision in *In re Spong,* 661 F.2d 6 (2d Cir.1981), the Sixth Circuit held that payments in the nature of support need not be made directly to the spouse or dependent in order to be nondischargeable. *Id.,* at 1107. Further, the *Calhoun* Court determined that although federal and not state law should ultimately control the determination of when debts are "in the nature of alimony or support," it concluded that this does not necessarily follow that state law must be ignored completely. *Id., citing, Spong, supra.* While state law is not binding, it nonetheless may provide a useful source of guidance. *Id.,* at 1109.

■ The three-pronged test enunciated by the Sixth Circuit to determine whether a debt was in the nature of support or alimony required the following: (1) an initial inquiry to determine whether the parties intended to provide a support obligation; (2) whether the underlying nature of the debt has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied; and (3) whether the amount of support represented by the debt is not so excessive that it becomes manifestly unreasonable under traditional concepts of support. *Id.,* at 1109–1110.

Applying the *Calhoun* test to the subject debt, the intention of the parties is initially considered. In so doing, it is noted that the separation agreement (Jt.Ex. 6) is silent regarding GAL fees. The judgment entry reappointing the Plaintiff as GAL, however, does manifest the parties' intention to provide a support obligation for the minor child. (Jt.Ex. 4). The language of the reappointment entry not only reflects that the reap-

pointment is an agreed entry to serve the interest of the minor child, but additionally indicates that this agreed entry ratifies "prior conduct" of the GAL as being "... reasonable and necessary work in furtherance of this Court's order and pursuant to the *agreement of the parties.*" (Emphasis added). That language, coupled with the Debtor's testimony (Lever, Cross Exam.) that she agreed to the contents of that entry, is sufficiently evident that the parties intended to provide a support obligation for the minor child by agreeing to the appointment of a GAL. The testimony of her attorney David Patterson and of her former spouse's attorney, Abraham Cantor, is in accord.

Next, it must be determined whether the nature of the debt has the effect of providing the requisite support for the minor child. This can be discerned from examining the statutory purpose of a GAL and the relevant testimony. Rule 75(B)(2), Oh.R.Civ.P., is clear to state that a guardian *ad litem* is to be appointed only "[W]hen it is essential to protect the interests of a child ..." Further, R.C. § 2151.28.1(B)(1), as noted above, mandates the appointment of a guardian *ad litem* where child abuse or neglect is alleged. The unrefuted testimony of the Plaintiff clearly indicated that the Debtor contacted her post-decree and alleged that either her former spouse or his brother was sexually abusing her child. (Lawson, Direct). At the time of the divorce, the minor child was two years old. Additionally, the above language of R.C. § 2151.28.1(I) describes the expansive scope of the GAL's duties to include the performance of "... whatever functions are necessary to protect the best interests of the child ...." Among these functions are investigation, monitoring court proceedings, mediation and the range of activities invoiced by the Plaintiff for her services rendered in this regard (Jt.Exs. 7 and 8). Finally, the Plaintiff's testimony describing her duties performed in this matter were not controverted. The totality of these factors substantially demonstrate that the statutory duties of a GAL were performed by the Plaintiff in this case, and the nature of such services rendered is clearly within the nature of support to meet the needs of the minor child. The statutory purpose and duties of a GAL are premised to provide support for the minor child.

The third prong of the *Calhoun* test, as stated above, is more applicable to the "assumed loan" issue as occurred in that case and is not actually relevant to an ultimate determination involving GAL fees. To the extent an addressment of that third prong may be deemed appropriate, however, the amount ($1,625.00) of the subject fees is not so excessive that it becomes unreasonable under traditional concepts of support. Firstly, the Levers agreed to share equally the GAL fees. (Jt.Ex. 4); (Testimony of Lever, Patterson, Cantor and Lawson). Secondly, the Debtor was employed at the time she agreed to pay her share of the fees, while a single parent. Presently, she has remarried and continues to be gainfully employed.

### Conclusion

Accordingly, the guardian *ad litem* fees at issue are hereby determined to be a nondischargeable debt, and judgment is hereby rendered in favor of the Plaintiff, Karen D. Lawson. Each party is to bear her respective costs. *See, In re Laney,* 53 B.R. 231 (Bankr.N.D.Texas 1985); *In re Coleman,* 37 B.R. 120 (Bankr.W.D.Wis.1984); *In re Yarns,* 23 B.R. 370 (Bankr.N.D.Ill.1982); *In re Morris,* 14 B.R. 217 (Bankr.D.Colo.1981).

IT IS SO ORDERED.